OPINION MAES, Justice. {1} This case presents the issue ofwarrantless vehicle searches after reported use of a weapon from said vehicle. Here, officers were dispatched in response to reports of an armed subject pointing a rifle at several people from the window of a light beige or tan vehicle. After Defendant Leticia T. (Child) and children passengers were removed and detained, the officers conducted a warrantless search of the interior and trunk of the vehicle. The district court held that the warrantless search was justified by exigent circumstances. The Court of Appeals reversed the district court, ruling that the possibility of a person hiding in the trunk of a vehicle does not constitute exigency. State v. Leticia T., 2012-NMCA-050, ¶ 14, 278 P.3d 553. {2} We reverse the Court of Appeals. We hold that when police officers have probable cause and exigent circumstances to believe that an armed subject pointed a rifle at other individuals from a vehicle, officers may search the cab and the trunk of that same vehicle for the rifle. I. FACTUAL AND PROCEDURAL BACKGROUND {3} Farmington police officers were dispatched to a Sonic Drive-In in response to reports of an armed subject pointing a “long gun” at several people from the window of a light beige or tan vehicle. At the suppression hearing, one of the responding officers, Officer Coate, testified that a felony stop procedure was conducted.Before any commands were given, Child exited the vehicle from the passenger side. Officer Coate testified that Child was placed into custody, slipped out of her handcuffs, and struck Officer Swenlc in the mouth. Officer Swenk was bleeding from his nose and upper lip but ultimately restrained Child with handcuffs and into the back of the squad car. {4} Two other juveniles also exited the vehicle. Officer Coate testified that once the cab of the vehicle was clear, the officers had a duty to check the trunk of the vehicle for any subjects that may be hiding. Officer Coate testified that on numerous occasions he had discovered a subject hiding in the trunk of a vehicle attempting to avoid detection by police. Officer Rahn testified that officers are trained to check the trunk during a felony stop because it can easily conceal a person. Officer Coate believed it was possible that a person was hiding in the trunk because there were reports of a person pointing a rifle from the window of the vehicle, however, a rifle was not found in the cab of the vehicle. Officer Coate also testified that he observed the vehicle moving back and forth prior to Child exiting the vehicle, which was consistent with people moving around in a vehicle. The dark tint on the windows prevented Officer Coate from seeing what was happening inside the vehicle. The officers “made sure there were no other subjects in [the] vehicle” before they “went in close and confirmed it was empty.” Officer Coate was concerned that the armed individual was still inside the vehicle, and the only place left to hide was the trunk. {5} Sergeant Simmons and Officer Smith were also at the scene.Officer Smith testified that she was the canine officer on scene and she had sent her dog to see if anyone else was inside the vehicle. Officer Smith testified that her dog is trained in all patrol activities including finding people and apprehending combative suspects. The dog failed to make a complete check of the vehicle due to the presence of onlookers so the officers instituted a secondary check. Sergeant Simmons testified that officers are trained to check the trunk of a vehicle in order to prevent a possible ambush. Sergeant Simmons opened the trunk, saw that the trunk was clear of any person and then observed the weapon used for the aggravated assault lying in the trunk in plain view. {6} Child was charged by criminal information with aggravated battery upon a peace officer with a deadly weapon and aggravated assault with a deadly weapon on March 16, 2010. Child filed a motion to suppress evidence from the search of the trunk, arguing that none of the recognized exceptions justified the warrantless search. In response, the State argued that the search was valid as a protective sweep and exigent circumstances did exist. The district court denied Child’s motion on grounds the that exigent circumstances validated the search. The district court denied the motion to suppress in two orders. In its amended order, the court stated: Based upon analysis of the following, State v. Garcia, 2005-[NMSC]-017, 138 N.M. 1, 116 P.3d 72, and State v. Duffy, 1998-NMSC-014, 126 N.M. 132, 967 P.2d 807, among others, the [cjourt finds that exigent circumstances justified the search of the trunk for the firearm that had not yet been located in the vehicle but had been seen by witnesses just prior to the stop. {7} Child entered into a conditional plea and disposition agreement and reserved the right to appeal the district court’s denial of her motion to suppress the evidence. Child agreed to a commitment to the Children, Youth, and Families Department (CYFD) for a period not to exceed two years. {8} The Court of Appeals reversed the district- court’s denial of the motion to suppress, holding that there was an absence of “a particularized showing of exigent circumstances” as required by the New Mexico Constitution. Leticia T.,2012-NMCA-050, ¶ 13 (internal quotation marks and citation omitted). The Court also ruled that the State’s protective sweep exception argument failed because the evidence presented did not establish specific and articulable facts necessary to justify such a search. Id. ¶ 15. {9} The State appealed to this Court pursuant to Article VI, Section 3 of the New Mexico Constitution; NMSA 1978, Section 34-5-14 (1972); and Rule 12-502 NMRA. On appeal the State argues that (1) exigent circumstances justified a warrantless search of the entire vehicle and (2) the protective sweep exception also justified a warrantless search of the trunk because it was possible that an armed subject was hiding therein. Because we hold that exigent circumstances justified the warrantless search of the vehicle, we do not address the State’s protective sweep argument. II. STANDARD OF REVIEW {10} This Court’s review of a motion to suppress involves questions of law and fact. State v. Urioste, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. The application ofthe law to the facts is reviewed de novo. State v. Nieto, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442. However, a reviewing court does “not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses.” Urioste, 2002-NMSC-023, ¶ 6. “We review the factual basis of the court’s ruling for substantial evidence, deferring to the district court’s view of the evidence.” State v. Williams, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. III. DISCUSSION {11} NewMexico’s Constitution provides more protection against unreasonable searches and seizures than the Fourth Amendment in automobile cases. State v. Cardenas-Alvarez, 2001-NMSC-017, ¶ 15, 130 N.M. 386, 25 P.3d 225. Article II, Section 10 of the New Mexico Constitution states, in relevant part, “no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized.” We established in State v. Gomez that New Mexico has consistently “expressed a strong preference for warrants.” 1997-NMSC-006, ¶ 36, 122 N.M. 777, 932 P.2d 1. “[0]ur courts have historically recognized that it is not always reasonable to require a warrant and have developed a number of well-established exceptions to the warrant requirement.” State v. Rowell, 2008-NMSC-041,¶ 11, 144 N.M. 371, 188 P.3d 95. Among the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit. See State v. Weidner, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. “[T]he State bears the burden of proving reasonableness.” Rowell, 2008-NMSC-041, ¶ 10 (internal quotation marks and citation omitted). {12} A warrantless entry into a vehicle under the exigent circumstances exception requires probable cause plus exigent circumstances. See State v. Ruffino, 1980NMSC-072, ¶ 3, 94 N.M. 500, 612 P.2d 1311. Probable cause exists when “seizable evidence exists at a particular location before a search warrant may issue.” State v. Williamson, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376. Probable cause is determined on a case-by-case basis. See State v. Aull, 1967-NMSC-233, ¶ 19, 78 N.M. 607, 435 P.2d437. We have defined exigent circumstances as “an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.” Gomez, 1997-NMSC-006, ¶ 39 (internal quotation marks and citation omitted). To determine if exigent circumstances exist, the court must decide “whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary.” State v. Valdez, 1990-NMCA-134, ¶ 14, 111 N.M. 438, 806 P.2d 578 (internal quotation marks and citation omitted). Exigencies must be known to an officer prior to or at the time of entry. State v. Attaway, 1994-NMSC-011, ¶ 28, 117 N.M. 141, 870 P.2d 103. This inquiry is objective. Gomez, 1997-NMSC-006, ¶ 40. {13} The State argues that it proved that the officers had probable cause to believe an offense had -been committed based on dispatch’s report that the suspects had aimed a rifle at bystanders from the window of a beige vehicle. The State asserts that several officers arrived at the location of the reported incident and found a vehicle matching that description; therefore they had probable cause to believe that someone in the vehicle was armed and had just assaulted individuals with a rifle. The State further contends that exigent circumstances existed because the situation required immediate action to prevent imminent danger to life or serious harm, or to forestall the imminent escape of a suspect or the destruction of evidence. The officers took immediate action by clearing the vehicle including the trunk. Citing Garcia, the State argues that this Court has already allowed officers to conduct a reasonable and limited search of a car for weapons, even after the suspects are removed from the vehicle. 2005-NMSC-017, ¶ 32. {14} Child argues that while the officers may have had probable cause to stop the vehicle and detain the passengers, once the children were out of the car, the officers needed probable cause to conduct a full-on search of the vehicle. Child asserts that the officers should have evaluated whether exigent circumstances existed after Child and the other suspects were handcuffed and detained. Child contends that exigent circumstances did not exist because: the canine cleared the vehicle; the officers did not move any of the onlookers back from the scene, indicating there was a lack of concern for public safety; and although Child became combative at one point, she was ultimately detained in the back of a police vehicle. Child further argues that both cases that the district court relied on are distinguishable from this case. First, unlike Garcia, no officer in this case saw a firearm in plain sight and within arm’s reach of Child nor was the trunk a readily accessible area. Child asserts that Duffy is equally distinguishable because Child did not attempt to flee therefore there was never a paradigmatic exigent circumstance that justified the officers’ warrantless search. Despite the fact that Garcia and Duffy are distinguishable from this instant case, nonetheless, based on the facts of this case exigent circumstances existed to justify the warrantless search. {15} We hold that this case is controlled by Rowell, 2008-NMSC-041. In Rowell, the defendant was stopped for speeding while on school property. Id. ¶ 2. During the investigation, the officer saw a baggie of marijuana in plain view, which he took from the defendant. Id. After handcuffing the defendant, the officer asked if the defendant had any guns, knives, or other dangerous weapons. Id. The defendant eventually told the officer that there was a shotgun in the back seat of his car. Id. The officer secured the defendant in the patrol car and then searched the defendant’s car, seizing from the passenger compartment “a loaded shotgun, a loaded revolver, a two-foot long wooden club, a straight-blade knife, nineteen shotgun shells, two box-cutter blades, and a package of Zig-Zag rolling papers,” and “[a] multi-tool knife . . . from the trunk:” Id. ¶ 3. {16} We concluded in Rowell that probable cause existed as soon as the defendant admitted that he had a shotgun in his car because it is a felony to bring a deadly weapon onto school property. Id. ¶ 27. Regarding exigent circumstances, we concluded that it was not objectively unreasonable for the officer to act immediately to remove the weapons from the defendant’s car even though at that point the defendant lacked personal access to his vehicle. Id. ¶ 33. Our rationale was that the deadly weapons in the defendant’s car remained accessible to students and others until the officer took prompt steps to secure the weapons. Id. ¶ 34. Therefore, once the officer knew that there was at least one firearm in the car, he was justified in searching every place inside where a weapon and its explosive ammunition might be located. [The officer] was not obligated to stop his search as soon as he found the first weapon. Finding an additional loaded firearm, other weapons and spare ammunition only served to enhance the good cause the officer had to continue his search of both the passenger compartment and the trunk to make sure he would secure the entire arsenal of weapons. Id. ¶ 35. {17} In Rowell, the mere possession of a gun on school property constituted a crime. In this case the officers were advised that an occupant in a tan car was pointing a rifle at a crowd of people, which gave rise to probable cause to believe that an assault with a deadly weapon had occurred. In Rowell, we assumed that carrying a gun on school property was dangerous. In this case the eyewitness accounts of someone pointing a rifle at a group of people is direct evidence of dangerous use of a deadly weapon. After the officers arrived at the scene, Child was handcuffed and secured in a patrol vehicle. The other occupants of the tan car were also secured in patrol vehicles. Thus, as in Rowell, Child and the other occupants no longer had access to any deadly weapons in the car. Also similar to Rowell, there was a group of onlookers who had gathered near where the car was located. {18} Granted, in Rowell, the defendant stated that there was a gun in his vehicle. Here, Child did not make such an admission but those who reported the felony said that an occupant of the tan car was pointing a rifle at a crowd of people. Therefore, the officers in both cases had information that a gun was in the car, albeit the information came from different sources. In Rowell, we held that the officer could search the trunk of the car, even though he retrieved deadly weapons from the passenger compartment, and the defendanthad been secured in the police vehicle. The important consideration in Rowell was the presence of others at the scene. In this case the canine officer testified that her dog failed to make a complete check for people inside the vehicle because of the presence of onlookers. In both cases the officers had probable cause to believe that a gun used in the commission of a crime was in a vehicle accessible to a group of people, even if it was not accessible to the defendant or Child. {19} We affirm the district court and agree that the officers had probable cause to believe that a gun used in the commission of a crime was in the vehicle accessible to a group of people, even if it was not accessible to Child. We hold that it was reasonable for the officers to believe that exigent circumstances existed. W e recognize that an individual in a car with a weapon, by itself, does not create exigent circumstances. And under our holding, unless the gun is evidence of a crime, an officer cannot search a vehicle following an arrest based on an assumption or a hunch that there is a deadly weapon in the car or merely when an officer sees a gun in a car. But see, State v. Ketelson, 2011-NMSC-023, ¶ 27, 150 N.M. 137, 257 P.3d 957 (holding that it is constitutionally permissible to temporarily seize a firearm from an automobile during the course of a stop to ‘ensure that it was beyond the reach of any of the occupants’ out of concern for officer safety.) {20} In support of our holding we note that in those state jurisdictions, like New Mexico, which require not only probable cause but exigent circumstances to conduct a search of a car, courts have held that exigent circumstances existed in situations where police have been unable to locate a known or reported weapon. For example, in Commonwealth v. Stewart, the court found exigent circumstances in a situation where the police were unable to find a firearm after stopping a car with probable cause to believe the occupants had been involved in a shootout. 740 A.2d 712, 718 (Pa. Super. Ct. 1999) Specifically, [w]hen the officers took the defendants into custody and patted them down for security purposes, they did not find any guns on the defendants’ persons. The officers were concerned that the defendants threw the gun out of the car and into the street between the time of the shooting and the time of apprehension by the police. If that were the case, then the police would have had to organize a search of the entire route that the defendants had traveled. The situation arose during a Saturday morning, and people at after-hours nightclubs were already coming out into the streets. There was a risk that a third person would be hurt when coming across the gun, which may have been an automatic that was still cocked and ready to fire. Id. {21} The court held that “[t]he officers reasonably concluded that the guns were either disposed of by the defendants in the street or were hidden in the car,” and that “[t]he officers and the public were in danger if the weapons were notrecovered; thus, there was a need for immediate police action.” Id. at 719. See also State v. Jones, 2013 WL 560837 (NJ.Super.A.D. 2013) (unreported) (citing New Jersey precedents holding that exigent circumstances are required for a warrantless automobile search, and that “[e]xigent circumstances exist ‘when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene’”). Likewise in this case, to protect the public from the firearm and its wielder and to prevent the loss of the firearm as evidence, the police had to know immediately whether the firearm was or was not located in the trunk of the car they had seized. {22} Further, the action of the officers in this case was not beyond the range of constitutionally reasonable choices for the on-scene officers to make. There are two particularly appropriate cautions.expressed in Gomez. First, “[i]f reasonable people might differ about whether exigent circumstances existed, we defer to the officer’s good judgment.” 1997-NMSC-006, ¶ 40. When reasonable people on three courts have reasonably differed on the exigent circumstances issue, that would seem to call for deference. Second, we should not let our preference for warrants result in overriding an officer’s on-the-scene decision to act immediately where immediate action is one of the lawful options. See id. ¶ 43 (“[Wjhile [taking the time to get a search warrant] would have been acceptable and even desirable, failure to have done so does not affect our ruling that it was reasonable for [the officer] to search the vehicle under circumstances giving rise to a reasonable belief that exigencies required an immediate search.”) IV. CONCLUSION {23} We conclude that the Court of Appeals erred in reversing the district court’s denial of Child’s motion to suppress. Because the search of Child’s trunk was valid under exigent circumstances, Child’s conditional plea stands. {24} IT IS SO ORDERED. PETRA JIMENEZ MAES, Justice WE CONCUR: BARBARA J. VIGIL, Chief Justice EDWARD L. CHAVEZ, Justice CHARLES W. DANIELS, Justice RICHARD C. BOSSON, Justice, dissenting