**Certiorari Denied, August 16, 2017, No. S-1-SC-36573**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-068**

**Filing Date: June 28, 2017**

**Docket No. A-1-CA-35017**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**LAWRENCE GARCIA,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hadfield, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}** Pursuant to a conditional plea agreement, Defendant appeals his conviction of driving while intoxicated (DWI). *See* NMSA 1978, § 66-8-102(D) (2010, amended 2016). Defendant argues that the district court erred in affirming the metropolitan court's denial of his motion

1

to suppress evidence, raising two issues on appeal: (1) whether the arresting officer had reasonable suspicion to initiate an investigatory stop, and (2) whether the legality of Defendant's seizure should be judged by the higher probable cause standard. We affirm.

**BACKGROUND**

**{2}** Charged with aggravated DWI in the Bernalillo County Metropolitan Court under Section 66-8-102(D), Defendant filed a motion to suppress all evidence obtained as a result of his detention by Deputy Trevor Weeks of the Bernalillo County Sheriff's Department (BCSO). Judge Sandra Engel held an evidentiary hearing on the motion, in which Deputy Weeks, the only witness, gave the following account.

**{3}** At 6:55 p.m., the BCSO dispatch received the initial 911 call regarding "a disorderly subject." The caller was a woman who had dated Defendant for two weeks, and reported that Defendant was "banging on her door" and sliding notes under it. She told the 911 operator that Defendant was wearing shorts and no shirt, and drove a black Ford F-150 truck, a Harley Davidson edition. Two minutes after the 911 call, Deputy Weeks was dispatched to the apartment complex where the caller lived. The information provided to Deputy Weeks did not allege any violence by Defendant against the caller. Nevertheless, given his experience on similar calls in the past, Deputy Weeks considered that there was the potential for violence in this call.

**{4}** Deputy Weeks was later informed by dispatch that the caller made a subsequent call at 7:08 p.m. to report that Defendant was leaving the apartment complex in his vehicle. At 7:10 p.m., Deputy Weeks arrived at the apartment complex and observed a black Ford F-150 truck, Harley Davidson edition, being driven towards the only point of entry or exit out of the gated community by a shirtless man. Based on information provided by dispatch, Deputy Weeks reasonably believed Defendant to be the person reported by the caller and stopped Defendant to investigate. The stop resulted in Defendant being arrested and charged with aggravated DWI.

**{5}** Judge Engel denied the motion to suppress on the basis that Deputy Weeks had a reasonable suspicion to stop Defendant and investigate based on the information he received from dispatch. The judge noted, "In this case . . . the caller was asking for help. I think that that raises this to a different level by calling 911 . . . it was her saying there is a man continuing to knock on my door that I used to be in a relationship with and common sense would tell me that this was something that needed to be investigated."

**{6}** Following the denial of the motion to suppress, Defendant entered into a conditional plea of guilty for a first offense of non-aggravated DWI under Section 66-8-102, while reserving the right to appeal the denial of his motion to suppress. Defendant then appealed to the district court. *See* NMSA 1978, § 34-8A-6(C) (1993) ("Any party aggrieved by a judgment rendered by the metropolitan court in a criminal action involving driving while under the influence of intoxicating liquors or drugs . . . may appeal to the district court of

2

the county in which the metropolitan court is located[.]"). The district court affirmed Judge Engel's metropolitan court order denying Defendant's motion to suppress. The district court determined that based on "the totality of the circumstances, Deputy Weeks had a reasonable and particularized suspicion [that Defendant] had harassed the 911-caller and broken the law." Defendant now appeals to this Court, this time from the order issued by the district court. *See* NMSA 1978, § 39-3-3(A) (1972) (granting a defendant the right to appeal from a final order entered by the district court in a criminal proceeding); NMSA 1978, § 34-5-8(A)(3) (1983) (providing that the court of appeals has jurisdiction to review on appeal all criminal actions except those in which a sentence of death or life imprisonment is imposed).

**Standard of Review**

**{7}** "A motion to suppress evidence involves a mixed question of fact and law." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. "Thus, our review of this case involves two parts: the first is a factual question, which we review for substantial evidence; the second is a legal question, which we review de novo." *Id.* "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Questions of reasonable suspicion are reviewed de novo. *State v. Simpson*, 2016-NMCA-070, ¶ 11, 388 P.3d 277.

**DISCUSSION**

**{8}** Defendant argues that Deputy Weeks lacked the reasonable suspicion necessary to stop Defendant for an investigatory detention. "Both the United States Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures." *State v. Funderburg*, 2008-NMSC-026, ¶ 12, 144 N.M. 37, 183 P.3d 922. An automobile stop is a "seizure" under the Fourth Amendment, and is therefore subject to its requirements. *See State v. Hubble*, 2009-NMSC-014, ¶ 7, 146 N.M. 70, 206 P.3d 579 (stating that an automobile stop "must be conducted in a reasonable manner to satisfy the Fourth Amendment" (internal quotation marks and citation omitted)). Our Supreme Court has defined and applied "the reasonable suspicion standard" in the same manner when conducting both Fourth Amendment and New Mexico Constitution Article II, Section 10 analyses. *State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858. Because Defendant has made no argument that the New Mexico Constitution affords greater protection than the Fourth Amendment of the United States Constitution, we assume both Constitutions afford the same level of protection. *See id.* ¶ 39 (applying the same reasonable suspicion analysis to an investigatory stop under Article II, Section 10 of the New Mexico Constitution as it did under the Fourth Amendment).

**{9}** "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "Whether an investigatory detention is justified by reasonable suspicion depends on the totality of the

3

circumstances, including the content of [the] information possessed by the police and its degree of reliability." *Simpson*, 2016-NMCA-070, ¶ 11 (internal quotation marks and citation omitted). "We objectively examine whether the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate." *Hubble*, 2009-NMSC-014, ¶ 8.

**{10}** We understand Defendant's position to be that the actions carried out by Defendant were not criminal in nature and that there was no evidence of the caller's distress regarding Defendant's presence outside of her door. This is an argument that negates the seriousness of Defendant's actions. Although there was no report of violence in the information sent by dispatch, Deputy Weeks considered the potential for violence to escalate in situations where harassment is involved. "We recognize that domestic disputes can become violent, and we do not intend to minimize the importance of responding to domestic disputes before they escalate to the level of criminal activity." *State v. Burciaga*, 1993-NMCA-151, ¶ 10, 116 N.M. 733, 866 P.2d 1200.[1] The caller was subject to menacing behavior by a man with whom she had a previous relationship. Defendant was banging on her door, and slipped notes underneath it, causing her so much distress she felt it was necessary to call 911 for immediate assistance with Defendant. She provided law enforcement with specific, identifying information in order to locate Defendant and even made a second call when Defendant drove away so that responding officers were updated as to Defendant's whereabouts. Whether Deputy Weeks had a reasonable suspicion to detain Defendant does not depend on whether Defendant actually committed a crime. *See Hubble*, 2009-NMSC-014, ¶ 9 (noting that reasonable suspicion to make a traffic stop did not hinge on whether a defendant violated the underlying statute). Deputy Weeks was provided information to form a reasonable inference that Defendant was breaking, or had broken, the law by committing criminal trespass or disorderly conduct. *See Jason L.*, 2000-NMSC-018, ¶ 20; *see also* NMSA 1978, § 30-14-1(B) (1995) (stating criminal trespass "consists of knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof"); NMSA 1978, § 30-20-1(B) (1967) (stating disorderly conduct consists of "maliciously disturbing, threatening or, in an insolent manner, intentionally touching any house occupied by any person"). Defendant knowingly remained at the caller's address without her consent, and Deputy Weeks reasonably believed that Defendant had maliciously disturbed the caller, in her home, by banging on her door and sliding notes underneath it. This was not a situation where a visitor was simply unwelcome. In stopping Defendant to investigate the call, Deputy Weeks, "as a person of reasonable caution," was taking appropriate action to assist the caller after she called 911 for help. *Hubble*, 2009-NMSC-014, ¶ 8.

---

[1]Although we do not make the determination of whether Defendant's and the caller's relationship qualified as a "continuing personal relationship" pursuant to the Family Violence Protection Act (the Act), NMSA 1978, § 40-13-2(A) (2010), we note that criminal trespass and harassment qualify as domestic abuse pursuant to the Act. *See* § 40-13-2(D)(2)(e), (i).

4

**{11}** Defendant argues that *State v. Garcia*, 2009-NMSC-046, 147 N.M. 134, 217 P.3d 1032, governs our analysis. Defendant's reliance on *Garcia* is misplaced. In *Garcia*, a police officer was called to a "possible domestic in progress" at a certain address. *Id.* ¶ 2. The dispatcher told the officer that the caller wished to have the defendant removed from the residence. *Id.* When the officer came to the intersection nearest to the address, he saw the defendant walking across the street. *Id.* Immediately upon seeing the defendant, the officer stopped his patrol car in the intersection, shined his spotlight on the defendant, and told him to stop. *Id.* ¶ 3. There was no evidence that the officer had received a description of him from dispatch, or knew by any other means that the defendant was the man referred to by the caller. *Id.* ¶ 2. Our Supreme Court first held that the defendant was seized under the New Mexico Constitution when the officer stopped his marked patrol car, shined the spotlight on the defendant, and told or ordered him to stop. *Id.* ¶ 44. Secondly, our Supreme Court held that the defendant's seizure was impermissible because the officer had no information that a crime had been or was being committed and even if he did, the fact that the defendant was merely walking in the vicinity, without any indication by description or otherwise, that the defendant was the responsible party, was not sufficient to support a reasonable suspicion to seize the defendant. *Id.* ¶¶ 45-46.

**{12}** Unlike the investigating officer in *Garcia*, Deputy Weeks had specific information providing "a reasonable and particularized suspicion" that Defendant had committed a crime—criminal trespass, disorderly conduct, or both. Furthermore, Defendant was not "merely in the vicinity" of where the call originated. Defendant was located in the apartment complex where the caller resided, which had only one point of entry to and exit from the premises. Deputy Weeks had specific, identifying information regarding Defendant's physical appearance and vehicle. Based upon the specific information provided by dispatch, when Deputy Weeks arrived at the caller's address minutes after the call, he was able to locate and identify the individual and the Ford F-150 truck described by dispatch on the premises of the apartment complex where the call originated. The call first came in to dispatch at 6:55 p.m., and Deputy Weeks identified Defendant inside his Ford truck as Defendant exited the premises at 7:10 p.m. Given the short amount of time that had passed from the initial 911 call until Deputy Weeks observed Defendant, and the information provided by dispatch, it was reasonable for Deputy Weeks to infer that Defendant was the same man whom the caller identified had been banging on her door.

**{13}** We conclude Deputy Weeks' investigatory detention of Defendant was supported by a constitutionally sufficient reasonable suspicion, and Judge Engel properly denied Defendant's motion to suppress.

**Probable Cause**

**{14}** Defendant's second issue on appeal is whether the higher standard of probable cause applies rather than reasonable suspicion. Defendant's motion to suppress was based on the investigatory stop made by Deputy Weeks and not his arrest. "An arrest must be supported by probable cause and an investigatory stop must be supported by reasonable

5

suspicion." *Jason L.*, 2000-NMSC-018, ¶ 14. We therefore decline to address Defendant's second argument.

**CONCLUSION**

**{15}** The order of the district court is affirmed. We remand this matter to the district court for such further proceedings as may be necessary to effectuate Defendant's guilty plea to non-aggravated DWI, first offense.

**{16}    IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**