2000-NMCA-029

999 P.2d 1038

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Angel ROMERO, Defendant–Appellee.**

No. 19,716.

Court of Appeals of New Mexico.

March 2, 2000.

Patricia A. Madrid, Attorney General, Robin Hammer, Special Assistant Attorney General, Santa Fe, for Appellant.

Phyllis H. Subin, Chief Public Defendant, Carolyn R. Glick, Assistant Appellate Defendant, Santa Fe, for Appellee.

## OPINION

SUTIN, Judge.

{1} This appeal by the State attacks the district court's refusal to allow a State's witness to testify in a criminal action in which Defendant was charged with contributing to the delinquency of a minor ("CDM") by encouraging a minor to violate her probation. The State contends that the district court based its refusal on an erroneous interpretation of the CDM statute, NMSA 1978, § 30–6–3 (1990). We disagree and affirm.

## FACTS AND PROCEEDINGS

{2} At 3:30 one morning a Santa Fe police officer observed a vehicle without its headlights on leaving the parking lot of a State office building. The car matched the description of a car allegedly involved in an aggravated assault with a firearm earlier that evening. Three adults and a minor were in the car. One adult was driving; Defendant Angel Romero, an adult, was riding in the front passenger seat; Margaret M., a sixteen-year-old, was in the right-rear passenger seat; and the third adult was riding in the left-rear passenger seat with a half empty gallon jug of vodka between his legs. The three adults appeared to be under the influence of drugs and/or alcohol. Margaret M. too, appeared to be intoxicated and failed a horizontal gaze nystagmus test. The officer found two marijuana cigarettes and a marijuana pipe in the car.

{3} At the time of the incident, Margaret M. was a ward of the State and on juvenile probation because of the commission of a felony. Her conditions of probation required that she not consume alcohol or be in the presence of anyone with alcohol. In addition, she had a curfew and was not permitted to

be out at 3:30 a.m. Defendant also was on probation at the time. Defendant had signed a standard conditions agreement with the probation department and was familiar with the requirements of her probation. Defendant and Margaret M. had mutual friends but were apparently not well acquainted.

{4} The CDM statute and the CDM uniform jury instruction, UJI 14–601 NMRA 2000, are at issue. Section 30–6–3, reads:

> Contributing to the delinquency of a minor consists of any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years.

> Whoever commits contributing to the delinquency of a minor is guilty of a fourth degree felony.

UJI 14–601 reads:

> For you to find the defendant guilty of contributing to the delinquency of a minor [as charged in Count . . . . ], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

> 1. The defendant _____;
> 2. This [caused]; [encouraged] _____ to;
> name of child
> [commit the offense of _____]
> [OR]
> [refuse to obey the reasonable and lawful commands or directions of (his)(her) (parent) (parents) (guardian) (custodian) (teacher) (a person who had lawful authority over _____)]
> name of child
> [OR]
> [conduct (himself) (herself) in a manner injurious to (his) (her)(the) (morals) (health) (welfare) (of _____)];
> name of child
> 3. _____ was under the age of 18;
> name of child
> 4. This happened in New Mexico on or about the _____ day of _____, _____.

(Footnotes omitted.) When the State asserted below that the root of Defendant's violation was Defendant's having caused or encouraged Margaret M. to fail to obey conditions of her probation, the district court questioned whether the State was prepared to prove that Defendant knew that Margaret M. was on probation. The State conceded that it could not prove that Defendant knew

that Margaret M. was on probation, but asserted that because the CDM statute was a strict liability statute the State need only prove the commands of the probation and Margaret M.'s refusal to obey those commands. The district court ruled that the State would not be permitted to elicit that testimony from the probation officer regarding the probation commands placed on Margaret M. unless the State could show that Defendant knew that Margaret M. was on probation.

{5} The question below and on appeal is, can a person be convicted of violating the CDM statute by encouraging or causing a minor to violate a condition of the minor's probation, if the person had no knowledge (neither knew, nor by the exercise of reasonable care, should have known) that the minor was on probation?

{6} The State contends on appeal that the district court erred in concluding that CDM is not a strict liability crime and that the court therefore applied an erroneous standard of law in requiring the State to lay a foundation for the probation officer's testimony, which had the effect of excluding the testimony. Because such testimony was a critical part of the State's prosecution, given the State's theory of the case, the State moved to appeal under NMSA 1978, § 39–3–3(B)(2) (1972), and the district court granted the motion. We review de novo whether the district court's decision to exclude evidence was based upon a misapprehension of the law. *See State v. Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20; *State v. Elinski*, 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209.

## DISCUSSION

{7} We first address Defendant's contention that we lack jurisdiction to entertain the appeal. Determining that we have jurisdiction, we then address the State's contention that the district court misinterpreted Section 30–6–3.

### I. *This Court Has Jurisdiction Over This Appeal*

{8} Defendant contends that we lack jurisdiction to hear this appeal because the

State lacks statutory authority to appeal. The State is permitted under Section 39–3–3(B)(2) to appeal "a decision or order of a district court suppressing or excluding evidence ... if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." We entertain this appeal because the court's ruling excluding the State's witness is based on an interpretation of the CDM statute that controlled the course of the presentation of material evidence in the case, given the State's theory. The court effectively ruled that under the CDM statute a defendant cannot be convicted of causing or encouraging a minor to violate probation unless the defendant "knew the minor was on probation, and could or should have known said minor's conditions of probation." The State, conceding it was unable to prove such knowledge, took the position that knowledge was not an element of CDM and thus irrelevant.

{9} The excluded evidence went to the very heart of the proof required to establish an essential element of the State's case, namely, whether Defendant caused or encouraged Margaret M. to refuse to obey probation commands or directions. The court's ruling made it impossible for the State to prove an element of its case. We have jurisdiction to entertain this appeal under Section 39–3–3(B)(2).

**II.** *Causing or Encouraging a Minor to Refuse to Obey the Command or Direction of a Third Party Requires Knowledge of the Command or Direction*

{10} UJI 14–601 sets out three specific criminal activities, namely, causing or encouraging a minor to (1) commit an offense, (2) refuse to obey the reasonable and lawful commands or directions of certain persons, and (3) conduct himself or herself in a manner injurious to his or her morals, health, or welfare.

{11} In the context of the third activity, that is, causing or encouraging a minor to conduct herself in a manner injurious to her morals, health, or welfare, our Supreme Court has held UJI 14–601 to substantially follow the CDM statute, and the language in the instruction to be the equivalent to the meaning of "delinquent" as that term is used in the statute. *See State v. Henderson,* 116 N.M. 537, 538–40, 865 P.2d 1181, 1182–84 (1993), *overruled in part on other grounds* by *State v. Meadors,* 121 N.M. 38, 908 P.2d 731 (1995). This appeal does not involve the first and third activities listed in UJI 14–601. Rather this appeal specifically involves that part of UJI 14–601 relating to a minor's refusal to obey commands or directions, and not to a minor either having committed an offense or having conducted himself or herself in a manner injurious to his or her health, morals, or welfare.

{12} Under UJI 14–601, we can understand that, if a person has no knowledge and no reason whatsoever to know that he or she is causing or encouraging a minor to *commit an offense,* the Legislature nevertheless may well have intended that person to be guilty of CDM even if the person did not knowingly act in violation of the CDM statute. It is reasonable to require that a person know what criminal offenses are in the statute books and be able to discern whether his or her acts tended to cause or encourage a minor to commit an offense. *See State v. Montoya,* 91 N.M. 262, 265, 572 P.2d 1270, 1273 (Ct.App.1977) ("Th[e] general rule is that ignorance of the law is not a defense."). We can also understand that, if a person does not believe that he or she was causing or encouraging a minor to act *in a manner injurious to the minor's morals, health, or welfare,* the Legislature may well have intended that person to be guilty of CDM even if the person did not knowingly act in violation of that language in the CDM statute. It is therefore at least arguably reasonable to require that a person know the contemporary community standards of "morals, health, and welfare," even though that language is a bit more vague than "commit an offense," and is certainly very broad. *Cf. State v. McKinley,* 53 N.M. 106, 111, 202 P.2d 964, 967 (1949).

{13} We have difficulty, however, understanding how the Legislature could have intended that, if a person has no knowledge and no reason to know that a minor is on probation, or subject to some other reason-

able or lawful command or direction, that person can be guilty of causing or encouraging the minor *to refuse to obey the command of the person to whose authority she was subject.* The construction of the statute advocated by the State requires persons in the presence of a minor, in order to be sure to avoid criminal prosecution for CDM, to be aware not only of each and every criminal offense on the books and of the contemporary community standards of morality, health, and welfare in New Mexico, but also to make themselves aware of whether the minor has been commanded or directed in some particular manner by someone with lawful authority over the minor, such as, in the present case, the minor's probation officer.

{14} As the State views legislative intent, a person interacting with a minor is at risk of criminal prosecution, irrespective of the location or time of the interaction with the minor, and of the person's own status (e.g. felon), and regardless of the absence of any knowledge whatsoever regarding any commands or directions of unknown third parties. To follow the State's thinking, every person in the presence of and interacting with a minor should not only have a sense of caution regarding his or her own and the minor's activities, but is also strapped with a legal duty to affirmatively inquire of the minor or others whether the minor is under any particular command or direction from a parent, guardian, custodian, teacher, or probation authority, which might give rise to a question whether the person's activities with the minor are somehow contrary to such command or direction.

{15} This view seems to carry us beyond the realm of reason, and we doubt very much that the Legislature intended every relationship and activity between one person (whether adult or minor, *see State v. Pitts,* 103 N.M. 778, 779, 714 P.2d 582, 583 (1986)) and a minor to require such forethought, analysis, and inquiry.

{16} Although we rarely consider hypothetical circumstances when a party offers them to prove a point, there exist such circumstances too numerous to count that point out the absurdity of the position taken by the

State. Every day, minors receive commands or directions from parents, teachers, and, if the minor has been in trouble with the law, probation officers. Every day, persons interacting with minors may, without knowing it, cause or encourage them to refuse to obey reasonable and lawful commands or directions. Every day, persons interact with minors without knowledge or reason to know of such commands or directions. Yet, under the literal, strict liability reading of UJI 14–601 argued by the State, the district attorney has authority to prosecute, and a jury has the authority to convict.

{17} The State argues that district attorneys would not enforce and juries would not convict in such instances because "any statute calls for judgment in both enforcement and adjudication." The State proposes "case-by-case analysis of the factual circumstances," because such analysis will prevent the abuses described in each "conjectural example." In addition, the State attempts to ameliorate concern that there may be prosecutorial or jury misjudgment with its policy argument that "the public's interest overrides that of the individual." We do not accept the State's arguments.

{18} We turn first to a discussion of the CDM statute and UJI 14–601 taken from the Committee Commentary to UJI 14–601. The Commentary states that when the Legislature enacted the Criminal Code in 1963 it

intended that the definition of juvenile delinquent for purposes of juvenile court jurisdiction be used in interpreting Section 30–6–3 NMSA 1978. Laws 1955, Chapter 205, Section 8(a) granted jurisdiction to the juvenile court over juveniles as follows:

Section 8. The juvenile court shall have exclusive original jurisdiction in proceedings:

a. concerning any juvenile under the age of eighteen years living or found within the county:

(1) ...;

(2) ... who by reason of habitually refusing to obey the reasonable and lawful commands or directions of his or her parent, parents, guardian, custodian, teacher or any person of lawful authori-

ty, is deemed to be habitually uncontrolled, habitually disobedient or habitually wayward....

Important observations can be drawn from this history. First, the " 'refusing to obey' " language that appears in UJI 14–601 came from a jurisdictional grant to juvenile court over juveniles, not from any analysis of what persons who interact with minors should be held under law to be aware. Second, the purpose of the " 'refusing to obey' " language in UJI 14–601 was significantly changed from a focus in juvenile court on a minor's "habitually refusing to obey," thus making the juvenile a delinquent, to a focus in the felony court on the person encouraging a minor to refuse to obey.

{19} Whether or not the commentator is correct in assuming what the Legislature intended in enacting the Criminal Code of 1963, it is obvious to us that the same assumption lacks rational basis when applied to that portion of UJI 14–601 relating to a minor's refusal to obey commands or directions. It does not follow that, because the Legislature granted jurisdiction to the juvenile court over juveniles who habitually refused to obey the reasonable and lawful commands of persons such as parents and teachers, the Legislature intended that a person be guilty of CDM for behavior that might arguably 'encourage' a minor to refuse to obey a command or direction of some third party of which the person being charged had neither knowledge nor reason to know.

{20} The Legislature may well have wanted to extend the broadest possible protection to children. *See Pitts*, 103 N.M. at 780, 714 P.2d at 584. It is not at all clear, though, that the Legislature intended criminal liability to be so broad as to encompass *any person* who, without knowledge of the direction, encourages a minor to do something that, unknown to that person, constitutes a refusal by the minor to obey a direction from a third party with lawful authority over the minor. A parent could easily be caught in this criminal liability web by unknowingly causing or encouraging his or her son to refuse to obey a command or direction of the boy's teacher or principal, or for asking his

or her son to invite his friend to join them for a late night concert, only to learn that the friend's parents forbade the friend to go or had imposed a curfew on the friend. Well-meaning young persons out with friends and acquaintances, having a party at someone's home, or sitting in a dormitory room in college, could be rudely awakened by a charge of CDM because a minor in the group refused to obey a command or direction from parents or probation authorities about curfew, or being in the presence of persons who are drinking alcoholic beverages. Circumstances like these are endless.

{21} The absurdity of prosecution under these and like circumstances—circumstances that can easily fit within the State's literal reading and interpretation of the CDM statute and UJI 14–601—lends more in favor of reading legislative intent *at the very least* to require a persons' knowledge of a third party's command or direction, before that person can be convicted of causing or encouraging a minor to refuse to obey such command or direction. For conviction, the requirement is that the defendant knew or should have known the nature of the command or direction. The instruction should state this. The rest is up to the jury.

{22} The State argues that the CDM statute requires no intent, citing *State v. Gunter*, 87 N.M. 71, 72, 529 P.2d 297, 298 (Ct.App. 1974). *Gunter* gives us no idea what elements of CDM were at issue in that case. Neither UJI 14–601, nor any similar instruction was at issue. Only the CDM statute itself was before the jury, and the issue was whether the court was required to give an instruction on criminal intent. The Court held that criminal intent was not an essential element of CDM. *See id.* We do not find *Gunter* binding, because it did not address the elements newly added to the statute through UJI 14–601. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (holding that cases are not authority for propositions they did not consider).

{23} We also do not think *Gunter* is applicable because it is knowledge of a circumstance, not a general intent to commit a crime, that is at issue here. The district

court in the present case held that the State was required to prove knowledge, not a specific or general criminal intent. We do not address today whether general criminal intent is required to convict under the CDM statute or any portion of UJI 14–601. *See* UJI 14–141 NMRA 2000. We are concerned with knowledge of third-party directions or commands.

{24} Our Supreme Court's decision in *State v. Trevino*, 116 N.M. 528, 865 P.2d 1172 (1993), has commanded a good deal of the parties' attention. Like *Gunter, Trevino* did not involve UJI 14–601 or any like instruction. *Id.* at 531–34, 865 P.2d at 1175–78. Only the CDM statute itself was at issue. The issue of whether criminal intent was required was neither raised nor decided in *Trevino.* In its discussion of a separate issue, the Supreme Court nevertheless stated: "Under our uniform jury instructions, the jury in this case was instructed under CDM that they also must find that Trevino's acts were intentional. *See* SCRA 1986, 14–141 (general criminal intent instruction—given except when crime requires specific intent or has no intent requirement)." *Trevino,* 116 N.M. at 531, 865 P.2d at 1175.

{25} In the present case, Defendant and the State both argue that *Trevino* supports their own positions. Defendant asserts that *Trevino* implicitly overruled *Gunter* or, at the very least, intentionally distanced *Gunter* so as to leave *Gunter* with no strength as precedent on the issue of intent. Defendant argues that *Trevino's* reference to intent in connection with CDM "under our uniform jury instructions" is not dicta. The State asserts that the Supreme Court in *Trevino* had the opportunity to correct any *Gunter* error and obviously chose not to do so. The State also contends that the issue before us today was not specifically raised in *Trevino,* and therefore *Trevino* did not decide the issue.

{26} Although the *Trevino* court's statement regarding CDM intent does not escape our attention, we think that both parties' reliance on *Trevino* is misplaced and their interpretations speculative. We agree with the State that the issue before us today was not raised or decided in *Trevino.* We there-fore hesitate to read too much into *Trevino. See Fernandez,* 115 N.M. at 627, 857 P.2d at 27. We see no indication that the Supreme Court even considered whether to correct any error in writing *Trevino.*

{27} We believe that CDM requires a degree of knowledge before conviction for causing or encouraging a minor to refuse to obey an order or command of a third party. Our decision today does not add an element not intended by the Legislature or the Supreme Court. *Cf. Reese v. State,* 106 N.M. 498, 501, 745 P.2d 1146, 1149 (1987) (Ransom, J., specially concurring) ("[L]egislative intent [to dispense with general criminal intent requirement] must clearly appear from the statute.") (citing *State v. Shedoudy,* 45 N.M. 516, 524, 118 P.2d 280, 286 (1941)). In construing statutes, we may consider the history and background of the statute as well as its language. *See State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988); *see also Production Credit Association v. Taxation and Revenue Dept., State of NM,* 2000–NMCA–021, ¶¶ 15–16, 128 N.M. 799, 999 P.2d 1031 (Ct.App.2000) (court can resort to legislative history or principles of statutory construction even when a statute appears to be clear and unambiguous on its face in order to search for and effectuate the purpose or object underlying the statute). When reading the language of the statute and attempting to ascertain and give effect to the intention of the Legislature, we consider the language of the statute as a whole, but a literal reading must give way to a reasonable construction when the literal reading leads to injustice, absurdity, or contradiction. *See Atencio v. Board of Educ.,* 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982). "[T]he legislative intent must be given effect by adopting a construction which will not render the statute's application absurd or unreasonable." *State v. Nance,* 77 N.M. 39, 46, 419 P.2d 242, 246–47 (1966).

{28} If the literal wording "creates consequences that the legislature could not have desired," or "leads to conclusions that are unjust or nonsensical." The court must look beyond a literal reading. *Investment Co. of the Southwest v. Reese,* 117 N.M. 655,

658, 875 P.2d 1086, 1089 (1994). We are not "bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the legislature." *Nance*, 77 N.M. at 46, 419 P.2d at 247. Thus, words can be added, and words in a statute can be read as though they were omitted, if that is necessary to effect legislative intent and prevent an absurd and unreasonable meaning. *See id.* at 47, 419 P.2d at 247 (words "as an accessory" in criminal statute read as though omitted); *State v. Padilla,* 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492 (holding it absurd to think the legislature intended to make "mere affronts to personal dignity" felonious under the crime of battery upon a police officer). "The judicial branch ... must select the rationale that most likely accomplishes the legislative purpose—or best fills a void not addressed by the legislature." *State v. Anaya,* 1997–NMSC–010, ¶ 29, 123 N.M. 14, 933 P.2d 223.

{29} In our view, as we have indicated, it would be absurd and unjust to put someone in the penitentiary for a year and a half on the bare bones of the UJI language in question without proof that the person charged knew or should have known of the lawful or reasonable command or direction he or she is charged with causing or encouraging the minor to disobey.

{30} Neither party cited any case on point from any jurisdiction. The absence of any close authority indicates that the literal strict criminal felony liability view advocated by the State, under the circumstances here, namely, the daily world of reasonable and lawful directions and commands of parents, teachers, custodians, guardians, and any other persons with lawful authority over a minor, is either an aberration or an unintended result in New Mexico law.

## CONCLUSION

{31} We hold that where the State seeks to convict a defendant of CDM for causing or encouraging a minor to refuse to obey the reasonable and lawful command or direction of the minor's parent, parents, guardian, custodian, or person who has lawful authority over the minor, the State must prove, as an essential element of the crime of CDM, that the defendant knew or by the exercise of

reasonable care should have known of such command or direction. We, therefore, affirm the trial court's exclusion of evidence.

{32} **IT IS SO ORDERED.**

BUSTAMANTE and WECHSLER, JJ., concur.