STATE V. GARCIA

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellant,**
**v.**
**EUGENE GARCIA,**
**Defendant-Appellee.**

Docket No. A-1-CA-36839
COURT OF APPEALS OF NEW MEXICO
May 21, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Karen L. Townsend, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Emily C. Tyson-Jorgenson, Assistant Attorney General, Santa Fe, NM for Appellant

Bennett J. Baur, Chief Public Defender, Caitlin C.M. Smith, Assistant Appellate Defender, Santa Fe, NM for Appellee.

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR: J. MILES HANISEE, Judge JACQUELINE R. MEDINA, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** The State appeals the district court's order excluding the test results of a blood draw performed pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), on the ground that the blood drawer was not authorized to draw Defendant Eugene Garcia's blood. Relying on *State v. Adams*, 2019-

NMCA-___, ___ P.3d ___ (No. A-1-CA-36506, May 21, 2019), filed concurrently with this opinion, we reverse.

**Background**

**{2}**     After he was arrested for driving while under the influence of an intoxicating liquor or drug (DUI), the arresting officer requested and received a warrant to obtain a sample of Defendant's blood for chemical analysis. The officer transported Defendant to the San Juan Regional Medical Center (the Medical Center) emergency room, where Defendant's blood was drawn by Nicole McNealy, an employee of the Medical Center.

**{3}**     The State charged Defendant with, inter alia, aggravated DUI, in violation of NMSA 1978, Section 66-8-102(D)(1) (2016). Defendant moved to suppress the blood test results on the on the ground that McNealy did not fall under the categories of individuals authorized to draw blood under NMSA 1978, Section 66-8-103 (1978), which provides that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *See also* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content."). Relying on *State v. Garcia*, 2016-NMCA-044, 370 P.3d 791, Defendant argued that the district court was required to exclude the blood test results because McNealy—who was licensed as an emergency medical technician (EMT)—did not fall into any of these categories.

**{4}**     At the evidentiary hearing on the motion, McNealy testified about her training and experience, as well as the procedures for legal blood draws. More detail about her testimony is included in our analysis of the State's arguments. After hearing the parties' arguments, in which Defendant relied on the plain text of Section 66-8-103 and the State emphasized McNealy's qualifications, the district court agreed that *Garcia* was dispositive and granted Defendant's motion, stating,

> [p]ursuant to my understanding of the law, the statute, . . . *Garcia*, the direction given to me by the Court of Appeals, an EMT-I simply doesn't fall under the statute. There's nothing wrong with Ms. McNealy's qualifications. However, the Legislature did not add them to the statute for an authorized blood drawer, so that's why I'm excluding the blood draw.

The State now appeals the suppression of the blood test results. *See* NMSA 1978, § 39-3-3(B) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state . . . within ten days from a decision or order of a district court suppressing or excluding evidence.").

**Discussion**

**{5}**     "We review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070. "A [district]

court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. "We review de novo whether the district court's decision to exclude evidence was based upon a misapprehension of the law." *State v. Romero*, 2000-NMCA-029, ¶ 6, 128 N.M. 806, 999 P.2d 1038. We defer to the "district court's findings of historical fact so long as they are supported by substantial evidence." *State v. Simpson*, 2016-NMCA-070, ¶ 8, 388 P.3d 277 (internal quotation marks and citation omitted).

**{6}** On appeal, the parties repeat the arguments advanced below.[1] We conclude that *Adams* requires reversal. We briefly summarize *Adams* and refer the parties to that opinion for a full discussion of *Garcia* and construction of Section 66-8-103. In *Adams*, addressing arguments nearly identical to those here, we rejected the defendant's argument that *Garcia* stated a categorical rule that EMTs are never authorized under Section 66-8-103 to draw blood for law enforcement purposes. *Adams*, 2019-NMCA-___, ¶ 22 ("*Garcia* does not stand for the proposition that Section 66-8-103 prohibits all EMTs from drawing blood."). We noted that the facts and arguments presented in *Garcia* presented a particular question, to wit: do EMTs fall within a sixth category of authorized persons under Section 66-8-103 as a "licensed professional"? *Adams*, 2019-NMCA-___, ¶ 22. Given *Garcia*'s analysis of this question, we concluded that *Garcia* merely stood for the proposition that an EMT license *alone* is insufficient to permit a person to draw blood under Section 66-8-103. *Adams*, 2019-NMCA-___, ¶ 22. Because the State in *Adams* did not argue that the EMT was qualified as a result of her license, but rather that the EMT qualified because of her additional training and experience, we concluded that *Garcia*'s analysis did not apply. *Id.* ¶ 21 (stating that different facts and arguments "warrant a different analysis than that of *Garcia*"). Additionally, we noted that the facts surrounding the blood draw distinguished *Adams* from *Garcia*. *Adams*, 2019-NMCA-___, ¶ 23.

**{7}** In keeping with *Adams*, we conclude that *Garcia* does not govern our analysis here because this matter is distinguishable from *Garcia*, both on the legal question presented and on the facts surrounding the blood draw. As to the legal question, the State argues not that McNealy is qualified to draw blood under Section 66-8-103 because she is licensed as an EMT, but that the Legislature intended for people with McNealy's skills and experience to fall within the category "laboratory technician" for purposes of Section 66-8-103. *See Adams*, 2019-NMCA-___, ¶ 22 (stating that *Garcia* addressed "whether the EMT's license would qualify her under the asserted (but rejected) additional category of 'licensed professional,' not whether an EMT with greater

---

1 To the extent Defendant argues that the State failed to preserve for appeal its specific argument that McNealy qualified as a laboratory technician under Section 66-8-103, we disagree. As indicated by its comments, the district court clearly understood the State's contention that McNealy fell within Section 66-8-103 based on her qualifications. Because McNealy was not a physician or licensed professional or practical nurse, the only relevant categories were laboratory technician or technologist. The district court relied on *Garcia* for the proposition that EMTs do not fall within Section 66-8-103, in effect rejecting the argument that McNealy's specific training and qualifications could bring her within the statute. Hence, the State's argument was preserved. See Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.").

experience and training could potentially qualify under another enumerated category"). As to the distinguishing facts, here McNealy was employed by the Medical Center and drew Defendant's blood in a hospital setting, not in the course of emergency care, as was the case in *Garcia. Compare Adams*, 2019-NMCA-___, ¶ 23, *with Garcia*, 2016-NMCA-044, ¶¶ 3-5. In addition, unlike *Garcia*, there is no dispute that McNealy used the Scientific Laboratory Division-approved test kit to ensure the reliability of the testing when drawing blood for law enforcement personnel. *Compare Adams*, 2019-NMCA-___, ¶ 2, *with Garcia*, 2016-NMCA-044, ¶ 5; *see* § 66-8-107 (providing that a test of blood or breath must be approved by the Scientific Laboratory Division of the Department of Health). Moreover, as we discuss next, McNealy had received training in phlebotomy and legal blood draws in addition to her EMT training. *See Adams*, 2019-NMCA-___, ¶ 21 ("Nor is there any indication that the *Garcia* EMT had any additional training or experience in drawing blood that would qualify her under any other category listed in Section 66-8-103.").

**{8}**     Having concluded that *Adams*—not *Garcia*—controls here, we proceed to determine whether McNealy was qualified under Section 66-8-103 to draw Defendant's blood for testing. In *Adams*, we construed Section 66-8-103 and concluded that, by authorizing to draw blood an undefined category of non-licensed medical personnel employed by a hospital or physician, such as laboratory technicians, "our Legislature was adopting approved medical practice." *Adams*, 2019-NMCA-___, ¶ 27. "In other words, an individual qualifies as a laboratory technician for purposes of Section 66-8-103 so long as a hospital or physician determined that she was qualified to perform blood draws in accordance with accepted medical standards based on her demonstrable skills, training, and experience." *Adams*, 2019-NMCA-___, ¶ 27.

**{9}**     Here, the district court did not make any written findings of fact but stated that "[t]here's nothing wrong with . . . McNealy's qualifications." McNealy's undisputed testimony supports this conclusion. McNealy testified that she was licensed as an EMT-Intermediate and was registered as an advanced emergency medical technician with the National Registry of Emergency Medical Technicians. More significantly, she testified that she had been employed by the Medical Center for five years, and that "peform[ing] legal blood alcohol draws at the request of law enforcement personnel" is one of her job duties. To this end, she had been trained in drawing blood by a phlebotomist at the Medical Center and in legal blood alcohol draws during orientation at the Medical Center. *See id.* ¶ 28 (holding that an EMT employed by a hospital whose assigned duties included drawing blood and who had received training in drawing blood qualified as a "laboratory technician" under Section 66-8-103).

**{10}**     In sum, McNealy's undisputed testimony demonstrated that the Medical Center hired her to perform, inter alia, legal blood draws, trained her in phlebotomy and legal blood draw procedures, and determined that she was qualified to perform those tasks. *See Adams*, 2019-NMCA-___, ¶ 27 (approving the reasoning that in authorizing non-licensed technicians to perform blood draws, the Legislature was aware that a hospital or physician would be "responsible for the training, qualifications, and competence of medical assistants employed and supervised by them to perform the routine task of

withdrawing a blood sample [and that n]o other standard is needed for the protection of the individual or the preservation of the purity of the blood sample" (internal quotation marks and citation omitted)). Hence, we conclude McNealy falls within the meaning of "laboratory technician" for purposes of the Implied Consent Act. As the district court excluded the blood test results based upon a misapprehension of Section 66-8-103 and our case law, the district court abused its discretion.

**Conclusion**

**{11}** For the foregoing reasons, we reverse the district court's order excluding Defendant's blood test results and remand for further proceedings consistent with this opinion.

**{12} IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**