STATE V. RILEY

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellant,**
**v.**
**DALLAS RILEY,**
**Defendant-Appellee.**

Docket No. A-1-CA-36863
COURT OF APPEALS OF NEW MEXICO
May 21, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Karen L. Townsend, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Emily C. Tyson-Jorgenson, Assistant Attorney General, Santa Fe, NM for Appellant

Bennett J. Baur, Chief Public Defender, Caitlin C.M. Smith, Assistant Appellate Defender, Santa Fe, NM for Appellee.

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR:  J. MILES HANISEE, Judge JACQUELINE R. MEDINA, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** The State appeals the district court's order excluding the test results of a blood draw performed pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), on the ground that the blood drawer was not authorized to draw Defendant Dallas Riley's blood. Relying on *State v. Adams*, 2019-

NMCA-___, ___ P.3d ___ (No. A-1-CA-36506, May 21, 2019), filed concurrently with this opinion, we reverse.

**Background**

**{2}**     Defendant was transported to San Juan Regional Medical Center (the Medical Center) after the vehicle he was driving was involved in a single-vehicle accident that caused the death of the vehicle's passenger. At the Medical Center, Defendant told an officer that he was the driver of the vehicle and that he had consumed two shots of rum and smoked marijuana before driving. The officer obtained a warrant for a blood-alcohol test, and Defendant's blood was drawn by Genaro Lopez, who was licensed as an Emergency Medical Technician (EMT) and employed as an emergency department technician at the Medical Center.

**{3}**     Defendant was charged with homicide by vehicle and driving while under the influence of alcohol or drugs. Defendant filed a motion to exclude the blood test results on the ground that Lopez did not fall under the categories of individuals authorized to draw blood under NMSA 1978, Section 66-8-103 (1978), which provides that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *See also* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content."). Relying on *State v. Garcia*, 2016-NMCA-044, 370 P.3d 791, Defendant argued that the district court was required to exclude the blood test results because Lopez—who was licensed as an emergency medical technician (EMT)—did not fall into any of these categories. In response, the State argued that Lopez's training and experience working at the Medical Center qualified him as a laboratory technician or technologist employed by a hospital or physician for purposes of Section 66-8-103.

**{4}**     At the evidentiary hearing on the motion, Lopez testified about his training and experience, as well as the procedures for legal blood draws. More detail about his testimony is included in our analysis of the State's arguments. The district court granted Defendant's motion to suppress, stating, "EMT[s] simply don't fall under [Section] 66-8-103 and I will follow the holding of *Garcia* . . . . I'm [going to] follow the same rationale in suppressing the blood results in this matter." The State now appeals the suppression of the blood test results. *See* NMSA 1978, § 39-3-3(B) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state . . . within ten days from a decision or order of a district court suppressing or excluding evidence.").

**Discussion**

**{5}**     "We review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070. "A [district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. "We

review de novo whether the district court's decision to exclude evidence was based upon a misapprehension of the law." *State v. Romero*, 2000-NMCA-029, ¶ 6, 128 N.M. 806, 999 P.2d 1038. We defer to "the district court's findings of historical fact so long as they are supported by substantial evidence." *State v. Simpson*, 2016-NMCA-070, ¶ 8, 388 P.3d 277 (internal quotation marks and citation omitted).

**{6}** On appeal, the parties repeat the arguments advanced below. We conclude that *Adams* requires reversal. We briefly summarize *Adams* and refer the parties to that opinion for a full discussion of *Garcia* and construction of Section 66-8-103. In *Adams*, addressing arguments nearly identical to those here, we rejected the defendant's argument that *Garcia* stated a categorical rule that EMTs are never authorized under Section 66-8-103 to draw blood for law enforcement purposes. *Adams*, 2019-NMCA-___, ¶ 22 ("*Garcia* does not stand for the proposition that Section 66-8-103 prohibits all EMTs from drawing blood."). We noted that the facts and arguments presented in *Garcia* presented a particular question, to wit: do EMTs fall within a sixth category of authorized persons under Section 66-8-103 as a "licensed professional"? *Adams*, 2019-NMCA-___, ¶ 22. Given *Garcia*'s analysis of this question, we concluded that *Garcia* merely stood for the proposition that an EMT license *alone* is insufficient to permit a person to draw blood under Section 66-8-103. *Adams*, 2019-NMCA-___, ¶ 22. Because the State in *Adams* did not argue that the EMT was qualified as a result of her license, but rather that the EMT qualified because of her additional training and experience, we concluded that *Garcia*'s analysis did not apply. *Id.* ¶ 21 (stating that different facts and arguments "warrant a different analysis than that of *Garcia*"). Additionally, we noted that the facts surrounding the blood draw distinguished *Adams* from *Garcia*. *Adams*, 2019-NMCA-___, ¶ 23.

**{7}** In keeping with *Adams*, we conclude that *Garcia* does not govern our analysis here because this matter is distinguishable from *Garcia*, both on the legal question presented and on the facts surrounding the blood draw. As to the legal question, the State argues not that Lopez is qualified to draw blood under Section 66-8-103 because he is licensed as an EMT, but that the Legislature intended for people with Lopez's skills and experience to fall within the category "laboratory technician" for purposes of Section 66-8-103. *See Adams*, 2019-NMCA-___, ¶ 22 (stating that *Garcia* addressed "whether the EMT's license would qualify her under the asserted (but rejected) category of 'licensed professional,' not whether an EMT with greater experience and training could potentially qualify under another enumerated category"). As to the distinguishing facts, here Lopez was employed by the Medical Center and drew Defendant's blood in a hospital setting, not in the course of emergency care, as was the case in *Garcia*. *Compare Adams*, 2019-NMCA-___, ¶ 23, *with Garcia*, 2016-NMCA-044, ¶¶ 3-5. In addition, unlike *Garcia*, there is no dispute that Lopez used the Scientific Laboratory Division-approved test kit to ensure the reliability of the testing when drawing blood for law enforcement personnel. *Compare Adams*, 2019-NMCA-___, ¶ 2, *with Garcia*, 2016-NMCA-044, ¶ 5; *see* § 66-8-107 (providing that a test of blood or breath must be approved by the Scientific Laboratory Division of the Department of Health). Moreover, as we discuss next, Lopez had received training in phlebotomy and legal blood draws in addition to his EMT training. *See Adams*, 2019-NMCA-___, ¶ 21 ("Nor is there any

indication that the *Garcia* EMT had any additional training or experience in drawing blood that would qualify her under any other category listed in Section 66-8-103.").

**{8}**    Having concluded that *Adams*—not *Garcia*—controls here, we proceed to determine whether Lopez was qualified under Section 66-8-103 to draw Defendant's blood for testing. In *Adams*, we construed Section 66-8-103 and concluded that, by authorizing to draw blood an undefined category of non-licensed medical personnel employed by a hospital or physician, such as laboratory technicians, "our Legislature was adopting approved medical practice." *Adams*, 2019-NMCA-___, ¶ 27. "In other words, an individual qualifies as a laboratory technician for purposes of Section 66-8-103 so long as a hospital or physician determined that []he was qualified to perform blood draws in accordance with accepted medical standards based on h[is] demonstrable skills, training, and experience." *Id.*

**{9}**    Although the district court did not make any findings of fact, Lopez's testimony at the motion hearing is undisputed. Lopez testified that he had been licensed as an EMT-Basic for approximately six years, employed at the Medical Center for four years, and that he assisted with "drawing blood, . . . splinting, EKGs, CPR, [and] any patient care." He testified that one of his duties was to "perform legal blood alcohol draws at the request of law enforcement personnel" and that he had been trained to draw blood by a phlebotomist at the Medical Center. Additionally, Lopez was able to describe the specific process for performing legal blood draws in detail.

**{10}**    In sum, Lopez's undisputed testimony demonstrated that the Medical Center hired him to perform, inter alia, legal blood draws, trained him in phlebotomy and legal blood draw procedures, and determined that he was qualified to perform those tasks. *See Adams*, 2019-NMCA-___, ¶ 27 (approving the reasoning that in authorizing non-licensed technicians to perform blood draws, the Legislature was aware that a hospital or physician would be "responsible for the training, qualifications, and competence of medical assistants employed and supervised by them to perform the routine task of withdrawing a blood sample [and that n]o other standard is needed for the protection of the individual or the preservation of the purity of the blood sample" (internal quotation marks and citation omitted)). Hence, Lopez falls within the meaning of "laboratory technician" for purposes of the Implied Consent Act. As the district court excluded the blood test results based upon a misapprehension of Section 66-8-103 and our case law, the district court abused its discretion.

**Conclusion**

**{11}**    For the foregoing reasons, we reverse the district court's order excluding Defendant's blood test results and remand for further proceedings consistent with this opinion.

**{12}    IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**