This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.                                                   **NO. A-1-CA-37180**

**JAMES HARRISON,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** The State appeals the district court's order excluding the test results of a blood draw performed pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), on the ground that the blood drawer was not authorized to draw Defendant James Harrison's blood. Relying on *State v. Adams*, 2019-NMCA-___, ___ P.3d ___ (No. A-1-CA-36506, May 21, 2019), which was filed after briefing was complete, we reverse.

**Background**

**{2}** Based on Defendant's performance on several field sobriety tests, an officer arrested Defendant for driving while intoxicated. Defendant agreed to have his blood tested, and the officer transported him to San Juan Regional Medical Center (the Medical Center), where Nicole McNealy, an Emergency Department Technician employed by the Medical Center, drew Defendant's blood for testing.

**{3}** Defendant was charged with driving while under the influence of alcohol or drugs and child abuse. Defendant filed a motion to exclude the blood test results on the ground that McNealy did not fall within the categories of individuals authorized to draw blood under NMSA 1978, Section 66-8-103 (1978), which provides that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *See also* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content."). Relying on *State v. Garcia*, 2016-NMCA-044, 370 P.3d 791, Defendant argued that the district court was required to exclude the blood test results because McNealy—who was licensed as an emergency medical technician (EMT)—did not fall into any of these categories. In response, the State argued that McNealy's training and experience working at the Medical Center qualified her as a laboratory technician or technologist employed by a hospital or physician for purposes of Section 66-8-103.

**{4}** At the evidentiary hearing on the motion, McNealy testified about her training and experience, as well as the procedures for legal blood draws. More detail about her testimony is included in our analysis of the State's arguments. The district court granted Defendant's motion to suppress, stating, "I have . . . to be consistent with what I keep doing until somebody tells me differently. So I am going to grant the motion to suppress until the case law changes or the Legislature adds EMT tech to the list of authorized blood drawers." Although the district court did not explain its reasoning in written conclusions of law, we understand the district court's statement as a reference to its reasoning in two previous cases in which it concluded that, under *Garcia*, "EMTs simply don't fall under Section 66-8-103." *State v. Riley*, No. A-1-CA-36863, mem. op. ¶ 4 (N.M. Ct. App. May 21, 2019) (non-precedential) (alterations and internal quotation marks omitted); *see State v. Talk*, No. A-1-CA-36378, mem. op. ¶ 4 (N.M. Ct. App. May 21, 2019) (non-precedential). The State now appeals the suppression of the blood test results. *See* NMSA 1978, § 39-3-3(B) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state . . . within ten days from a decision or order of a district court suppressing or excluding evidence.").

**Discussion**

**{5}** "We review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070. "A [district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. "We review de novo whether the district court's decision to exclude evidence was based

upon a misapprehension of the law." *State v. Romero*, 2000-NMCA-029, ¶ 6, 128 N.M. 806, 999 P.2d 1038. We defer to "the district court's findings of historical fact so long as they are supported by substantial evidence." *State v. Simpson*, 2016-NMCA-070, ¶ 8, 388 P.3d 277 (internal quotation marks and citation omitted).

**{6}** On appeal, the parties repeat the arguments advanced below. We conclude that *Adams* requires reversal. We briefly summarize *Adams* and refer the parties to that opinion for a full discussion of *Garcia* and construction of Section 66-8-103. In *Adams*, addressing arguments nearly identical to those here, we rejected the defendant's argument that *Garcia* stated a categorical rule that EMTs are never authorized under Section 66-8-103 to draw blood for law enforcement purposes. *Adams*, 2019-NMCA-___, ¶ 22 ("*Garcia* does not stand for the proposition that Section 66-8-103 prohibits all EMTs from drawing blood."). We noted that the facts and arguments presented in *Garcia* presented a particular question, to wit: do EMTs fall within a sixth category of authorized persons under Section 66-8-103 as a "licensed professional"? *Adams*, 2019-NMCA-___, ¶ 22. Given *Garcia*'s analysis of this question, we concluded that *Garcia* merely stood for the proposition that an EMT license *alone* is insufficient to permit a person to draw blood under Section 66-8-103. *Adams*, 2019-NMCA-___, ¶ 22. Because the State in *Adams* did not argue that the EMT was qualified as a result of her license, but rather that the EMT was qualified because of her additional training and experience, we concluded that *Garcia*'s analysis did not apply. *Adams*, 2019-NMCA-___, ¶ 21 (stating that different facts and arguments "warrant a different analysis than that of *Garcia*"). Additionally, we noted that the facts surrounding the blood draw distinguished *Adams* from *Garcia*. *Adams*, 2019-NMCA-___, ¶ 23.

**{7}** In keeping with *Adams*, we conclude that *Garcia* does not govern our analysis here because this matter is distinguishable from *Garcia*, both on the legal question presented and on the facts surrounding the blood draw. As to the legal question, the State argues not that McNealy is qualified to draw blood under Section 66-8-103 because she is licensed as an EMT, but that the Legislature intended for people with McNealy's skills and experience to fall within the category "laboratory technician" for purposes of Section 66-8-103. *See Adams*, 2019-NMCA-___, ¶ 22 (stating that *Garcia* addressed "whether the EMT's license would qualify her under the asserted (but rejected) category of 'licensed professional,' not whether an EMT with greater experience and training could potentially qualify under another enumerated category"). As to the distinguishing facts, it is undisputed that McNealy was employed by the Medical Center and drew Defendant's blood in a hospital setting, not in the course of emergency care, as was the case in *Garcia*. *Compare Adams*, 2019-NMCA-___, ¶ 23, *with Garcia*, 2016-NMCA-044, ¶¶ 3-5. In addition, unlike *Garcia*, there is no dispute on appeal that McNealy used the Scientific Laboratory Division (SLD)-approved test kit to ensure the reliability of the testing when drawing blood for law enforcement personnel. *Compare Adams*, 2019-NMCA-___, ¶ 2, *with Garcia*, 2016-NMCA-044, ¶ 5; *see* § 66-8-107 (providing that a test of blood or breath must be approved by the SLD). Moreover, as we discuss next, McNealy had received training in phlebotomy and legal blood draws in addition to EMT training. *See Adams*, 2019-NMCA-___, ¶ 21 ("Nor is there any

indication that the *Garcia* EMT had any additional training or experience in drawing blood that would qualify her under any other category listed in Section 66-8-103.").

**{8}**     Having concluded that *Adams*—not *Garcia*—controls here, we proceed to determine whether McNealy was qualified under Section 66-8-103 to draw Defendant's blood for testing. In *Adams*, we construed Section 66-8-103 and concluded that, by authorizing an undefined category of non-licensed medical personnel employed by a hospital or physician to draw blood, such as laboratory technicians, "our Legislature was adopting approved medical practice." *Adams*, 2019-NMCA-___, ¶ 27. "In other words, an individual qualifies as a laboratory technician for purposes of Section 66-8-103 so long as a hospital or physician determined that she was qualified to perform blood draws in accordance with accepted medical standards based on her demonstrable skills, training, and experience." *Adams*, 2019-NMCA-___, ¶ 27.

**{9}**     Although the district court did not make any findings of fact, Defendant does not contest McNealy's testimony at the motion hearing on appeal. McNealy testified that she had been licensed as an EMT-Basic since 2012 and EMT-Intermediate since 2013 and that she had been employed at the Medical Center for five years. McNealy stated that she learned to draw blood through a class held in the hospital lab during orientation to employment at the Medical Center and advanced her skills through the EMT-Intermediate training, during which she learned to start IVs. She testified that one of her duties was to draw blood and that she typically performs that task ten times per shift, roughly thirty times per week, including both standard and legal blood draws. Additionally, McNealy described in detail the specific process for performing legal blood draws using the test kit approved by the SLD. *See Garcia*, 2016-NMCA-044, ¶ 4 ("SLD-approved blood draw kits include everything that is needed for a blood draw to ensure continuity and standardization, and to avoid compromising the accuracy and integrity of blood samples."). Finally, McNealy testified that she had completed more than thirty legal blood draws in her career.

**{10}**   In sum, McNealy's undisputed testimony demonstrated that the Medical Center hired her to perform, among other things, legal blood draws, trained her in blood draw procedures, and determined that she was qualified to perform those tasks. *See Adams*, 2019-NMCA-___, ¶ 27 (approving the reasoning that in authorizing non-licensed technicians to perform blood draws, the Legislature was aware that a hospital or physician would be "responsible for the training, qualifications, and competence of medical assistants employed and supervised by them to perform the routine task of withdrawing a blood sample [and that n]o other standard is needed for the protection of the individual or the preservation of the purity of the blood sample" (internal quotation marks and citation omitted)). Hence, McNealy falls within the meaning of "laboratory technician" for purposes of the Implied Consent Act. As the district court excluded the blood test results based upon a misapprehension of Section 66-8-103 and our case law, the district court abused its discretion in granting Defendant's motion.

**Conclusion**

**{11}** For the foregoing reasons, we reverse the district court's order excluding Defendant's blood test results and remand for further proceedings consistent with this opinion.

**{12}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**