This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                                          **NO. A-1-CA-37561**

**MICHAEL JARAMILLO,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**VANZI, Judge.**

**{1}**     The State appeals the district court's order excluding the test results of a blood draw performed pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), on the ground that the blood drawer was not authorized to draw Defendant Michael Jaramillo's blood. Relying on *State v. Adams*, 2019-NMCA-___, ___ P.3d ___ (No. A-1-CA-36506, May 21, 2019), filed after briefing was complete, we reverse.

**Background**

**{2}**     After Defendant was arrested for driving while intoxicated, his blood was drawn for testing, pursuant to a warrant, by Julian Bitsuie, an Emergency Room Technician employed by the San Juan Regional Medical Center (the Medical Center). Charged with one count of aggravated driving while intoxicated and one count of driving with a suspended license, *see* NMSA 1978, § 66-8-102(D)(3) (2016); NMSA 1978, § 66-5-39(A) (2013), Defendant moved to exclude the blood test results on the ground that Bitsuie did not fall within the categories of individuals authorized to draw blood under NMSA 1978, Section 66-8-103 (1978), which provides that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *See also* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content."). Relying on *State v. Garcia*, 2016-NMCA-044, 370 P.3d 791, Defendant argued that the district court was required to exclude the blood test results because Bitsuie, who was licensed as an emergency medical technician-basic (EMT-B),did not fall into any of these categories. In response, the State argued that Bitsuie's training and experience he received while working at the Medical Center qualified him to draw blood for purposes of Section 66-8-103.

**{3}**     At the evidentiary hearing on the motion, Bitsuie testified about his training and experience, as well as the procedures for legal blood draws. More detail about his testimony is included below. The district court granted Defendant's motion to suppress, and the State now appeals the suppression of the blood test results. *See* NMSA 1978, § 39-3-3(B)(2) (1972) ("In any criminal proceeding in district court an appeal may be taken by the state . . . within ten days from a decision or order of a district court suppressing or excluding evidence.").

**Discussion**

**{4}**     "We review the [district] court's decision to exclude or admit evidence for an abuse of discretion." *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070. "A [district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Lente*, 2005-NMCA-111, ¶ 3, 138 N.M. 312, 119 P.3d 737. "We review de novo whether the district court's decision to exclude evidence was based upon a misapprehension of the law." *State v. Romero*, 2000-NMCA-029, ¶ 6, 128 N.M. 806, 999 P.2d 1038. We defer to "the district court's findings of historical fact so long as they are supported by substantial evidence." *State v. Simpson*, 2016-NMCA-070, ¶ 8, 388 P.3d 277 (internal quotation marks and citation omitted).

**{5}**     On appeal, the parties repeat the arguments advanced below.[1] We conclude that our decision in *Adams* requires reversal. We briefly summarize *Adams* and refer the

---

1 To the extent Defendant argues that the State did not preserve its argument that Bitsuie qualifies as a laboratory technician under Section 66-8-103, we disagree. The State argued in the district court that Bitsuie was qualified to perform legal blood draws based on his training and experience in addition to his EMT-B training, and the district court's findings and conclusions indicate that it considered whether Bitsuie's additional training was sufficient to satisfy the statute in any capacity. *See State v. Hill*, 2001-NMCA-094, ¶ 7, 131 N.M. 195, 34 P.3d 139 (holding that

parties to that opinion for a full discussion of *Garcia* and construction of Section 66-8-103. In *Adams*, addressing arguments nearly identical to those here, we rejected the defendant's argument that *Garcia* stated a categorical rule that EMTs are never authorized under Section 66-8-103 to draw blood for law enforcement purposes. *Adams*, 2019-NMCA-___, ¶ 22 ("*Garcia* does not stand for the proposition that Section 66-8-103 prohibits all EMTs from drawing blood."). We noted that the facts and arguments presented in *Garcia* presented a particular question, to wit: do EMTs fall within a sixth category of authorized persons under Section 66-8-103 as a "licensed professional"? *Adams*, 2019-NMCA-___, ¶ 22. Given *Garcia*'s analysis of this question, we concluded that *Garcia* merely stood for the proposition that an EMT license *alone* is insufficient to permit a person to draw blood under Section 66-8-103. *Adams*, 2019-NMCA-___, ¶ 22. Because the State in *Adams* did not argue that the EMT was qualified as a result of her license, but rather that the EMT was qualified because of her additional training and experience, we concluded that *Garcia*'s analysis did not apply. *Adams*, 2019-NMCA-___, ¶ 21 (stating that different facts and arguments "warrant a different analysis than that of *Garcia*"). Additionally, we noted that the facts surrounding the blood draw distinguished *Adams* from *Garcia*. *Adams*, 2019-NMCA-___, ¶ 23.

**{6}**    In keeping with *Adams*, we conclude that *Garcia* does not govern our analysis here because this matter is distinguishable from *Garcia*, both on the legal question presented and on the facts surrounding the blood draw. As to the legal question, the State argues not that Bitsuie is qualified to draw blood under Section 66-8-103 because he is licensed as an EMT, but that the Legislature intended for people with Bitsuie's skills and experience to fall within the category "laboratory technician" for purposes of Section 66-8-103. *See Adams*, 2019-NMCA-___, ¶ 22 (stating that *Garcia* addressed "whether the EMT's license would qualify her under the asserted (but rejected) category of 'licensed professional,' not whether an EMT with greater experience and training could potentially qualify under another enumerated category"). As to the distinguishing facts, here Bitsuie was employed by the Medical Center and drew Defendant's blood in a hospital setting, not in the course of emergency care, as was the case in *Garcia*. *Compare Adams*, 2019-NMCA-___, ¶ 23, *with Garcia*, 2016-NMCA-044, ¶¶ 3-5. In addition, unlike *Garcia*, there is no dispute that Bitsuie used the Scientific Laboratory Division (SLD)-approved test kit to ensure the reliability of the testing when drawing blood for law enforcement personnel. *Compare Adams*, 2019-NMCA-___, ¶ 2, *with Garcia*, 2016-NMCA-044, ¶ 5; *see* § 66-8-107 (providing that a test of blood or breath must be approved by the SLD). Moreover, as we discuss next, Bitsuie had received training in standard and legal blood draws in addition to his EMT training. *See Adams*, 2019-NMCA-___, ¶ 21 ("Nor is there any indication that the *Garcia* EMT had any additional training or experience in drawing blood that would qualify her under any other category listed in Section 66-8-103.").

**{7}**    Having concluded that *Adams*—not *Garcia*—controls here, we proceed to determine whether Bitsuie was qualified under Section 66-8-103 to draw Defendant's blood for testing. In *Adams*, we construed Section 66-8-103 and concluded that, by

an issue was preserved where "the district court was sufficiently alerted to th[e] issue" by the appellant's arguments).

authorizing an undefined category of non-licensed medical personnel employed by a hospital or physician to draw blood, such as laboratory technicians, "our Legislature was adopting approved medical practice." *Adams*, 2019-NMCA-___, ¶ 27. "In other words, an individual qualifies as a laboratory technician for purposes of Section 66-8-103 so long as a hospital or physician determined that []he was qualified to perform blood draws in accordance with accepted medical standards based on h[is] demonstrable skills, training, and experience." *Adams*, 2019-NMCA-___, ¶ 27.

**{8}** The district court found that Bitsuie held an EMT-Basic certification and that Bitsuie "received training to perform medical venipuncture under the guidance and direction of a physician or nurse as part of his position as an Emergency Room Technician, (he made twenty supervised blood draws)." It found that Bitsuie had been instructed on how to complete a legal blood draw using the SLD-approved kit. However, it also found that Bitsuie "only received instructions on how to do '[b]lood [a]lcohol' blood draws by on-the- job training, (his co-workers told him how to fill out the hospital required paperwork and how to work with the officer), from police officers and from reading the instruction provided with the SLD blood kit." The district court concluded that the lack of "formal training" by the SLD was determinative, stating,

> As an EMT-Basic employed as an Emergency Room Technician with no formal training from the [SLD] in legal blood-alcohol venipuncture and specimen collection, Julian Bitsuie did not qualify as a person authorized to draw blood under the Implied Consent Act, and as such, this blood test was not performed pursuant to the Implied Consent Act.

The district court also noted in its conclusions of law that "[t]he [EMT] who withdrew [the defendant's blood in *Garcia*] was an EMT Intermediate, a higher-level of certification requiring more education and training than the EMT-Basic certification possessed by Mr. Bitsuie[.]"

**{9}** The district court's conclusions in this regard, which disregard its own earlier findings, are not supported by law. First, we see nothing in Section 66-8-103 indicating that authorization to draw blood under the Implied Consent Act depends on formal training to do so *by the SLD* and Defendant does not cite, nor did the Court find, any authority for this proposition. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[G]iven no cited authority, we assume no such authority exists[.]"). Second, as explained above and in *Adams*, the facts in *Garcia* are readily distinguishable from situations, like here, where the blood drawer is both certified as an EMT and is employed, trained, and supervised by a hospital to draw blood. Hence, the district court's reliance on the fact that Bitsuie held a lower-level certification than the EMT in *Garcia* was misplaced. Finally, we held in *Adams* that authorization under Section 66-8-103 depends on the training and qualifications of the person drawing blood. *Adams*, 2019-NMCA-___, ¶ 27. Here, the district court found that Bitsuie learned how to perform both standard and legal blood draws as part of his job at the Medical Center and that he "utilized a standard [SLD-]approved blood collection kit in drawing Defendant's blood and followed the instructions contained in it[.]" We defer to these findings of fact

because they are supported by the evidence. *See Simpson*, 2016-NMCA-070, ¶ 8. Based on the district court's findings, we conclude that Bitsuie qualified as a laboratory technician under Section 66-8-103. *See Adams*, 2019-NMCA-___, ¶ 29 (holding that the emergency room technician/EMT-Intermediate there was qualified under Section 66-8-103 where she "received training from other technicians and nurses in drawing blood, and the Medical Center determined she was competent to perform draws unsupervised" and the "blood draw was properly performed in accordance with the SLD-approved blood draw kit instructions"). As the district court excluded the blood test results based upon a misapprehension of Section 66-8-103 and our case law, the district court abused its discretion. *See Lente*, 2005-NMCA-111, ¶ 3.

**Conclusion**

**{10}**   For the foregoing reasons, we reverse the district court's order excluding Defendant's blood test results and remand for further proceedings consistent with this opinion.

**{11}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**